**Dr. Ann Knight RANDALL, Plaintiff,**

**v.**

**HOWARD UNIVERSITY, Defendant.**

**Civ. A. No. 96–1293 (CRR).**

United States District Court, District of Columbia.

Oct. 21, 1996.

Ann Knight Randall, Brooklyn, NY, pro se.

Leroy T. Jenkins, Jr., Senior Associate General Counsel, Howard University, Washington, DC, for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Before the Court in the above captioned employment discrimination case is the defendant's Motion for Summary Judgment and the plaintiff's Opposition thereto. Based on the pleadings, the entire record herein, the law applicable thereto, and for the reasons expressed below, the Court shall grant the defendant's Motion for Summary Judgment.

## BACKGROUND

The following facts are undisputed. On September 1, 1989, the plaintiff was appointed by Howard University to the position of Director of University Libraries, Division of Academic Affairs. The term of the plaintiff's employment contract was three years, from September 1, 1989 until August 31, 1992. Plaint's Opp.Exh. 1. Subsequently, the plaintiff was reappointed for a term of three years to extend through August 31, 1995. *Id.* at Exh. 1b.

During September 1994, Dr. Orlando L. Taylor, Interim Vice President for Academic Affairs at Howard University and the plaintiff's immediate superior, received several complaints about the plaintiff from three of her subordinates, Clara Guyton, Laura Willis, and Mod Mekkawi, who were supervisors in University Libraries. Def's Mot. at Exh. 1. Specifically, the following complaints were made:

1. Decisions, restructuring plans, and other recommendations were submitted by

the [plaintiff] without involving Assistant Directors or other supervisors.

2. Supervisors were excluded from participating in the administrative meeting of August 24, 1994.

3. Members of the Library Director's Council were directed by the [plaintiff] to "disregard the memorandum" regarding meetings scheduled for September 6, 1994 and October 3, 1994.

4. Without approval, the [plaintiff] revised the Employment Data Forms provided in Dr. Ladner's memorandum of August 18, 1994 and disseminated to employees for completion.

*Id.* at Exh. 4. The complaints concerned the three subordinates' non-involvement in a University–wide restructuring plan in which all supervisors were to participate pursuant to a directive from the Interim President, Dr. Joyce A. Ladner. Def's Mot. at Exh. 3.

Dr. Taylor reviewed the complaints from Guyton, Willis, and Mekkawi, and discussed the matter with Dr. Ladner. The University's Office of Human Resource Management, headed by Ms. Michele Wright, investigated the complaints and reported back to Dr. Taylor by memorandum dated October 12, 1994 that the plaintiff had "created a severe work disruption within the work force in the University Libraries." Def's Mot. at Exh. 4. Ms. Wright recommended that the plaintiff "be immediately placed on administrative leave with pay until a final decision regarding her employment status is made." *Id.* Dr. Taylor advised the plaintiff of the complaints and gave her an opportunity to respond. The plaintiff provided a response on October 26, 1994. Def's Mot. at Exh. 6.

On December 13, 1994, Dr. Taylor transmitted a memorandum to Dr. Ladner, who had directly supervised the plaintiff during her tenure as the Vice President for Academic Affairs. Dr. Taylor reported his findings and recommended that the plaintiff be terminated upon the expiration of her current appointment period. Dr. Ladner reviewed the memorandum, discussed the matter with Dr. Taylor, agreed with his recommendation, and determined that the plaintiff should be removed from her position and replaced by Mekkawi, who is a male subordinate of the plaintiff's. Mekkawi holds graduate degrees from American University of Beirut, University of Pittsburgh, and Georgetown University, one post-graduate diploma in development planning, and has done doctoral studies at Johns Hopkins University. He has worked at Howard University for more than 25 years, moving progressively in library administration. Since 1983, he had been the Assistant Director for the Founders Library, and Assistant Director for Founders–UGL since 1990. Prior to the plaintiff's termination, he served as Assistant Director of Central Library Services.

This case was filed on June 10, 1996. On July 12, 1996 and on August 9, 1996, the Court held Rule 16 scheduling conferences. The defendant filed a Motion for Summary Judgment on September 13, 1996, to which the plaintiff filed an Opposition on September 27, 1996. A pretrial conference was held before the Court on October 7, 1996, during which the Court advised the plaintiff that she was not in compliance with the Court's previous scheduling Orders and gave her leave to submit her pretrial materials late. Also at the pretrial conference, the Court advised the plaintiff of her burdens with respect to avoiding summary judgment under the Tripartite Framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The Court advised the parties it would rule on the Motion for Summary Judgment forthwith.

### DISCUSSION

The Court must grant summary judgment for the moving party if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356,

89 L.Ed.2d 538 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 1).

An issue must be both genuine and material to preclude the entry of summary judgment. *Id.* at 247–48, 106 S.Ct. at 2509–10. An issue is genuine if there is sufficient evidence to support a rational finding either way. In making this determination, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.* at 255, 106 S.Ct. at 2513. "Only disputes of facts that might affect the outcome of the suit ... will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2509.

In ruling on a motion for summary judgment, the Court must "view the evidence presented through the prism of the substantive evidentiary burden" that would apply at the trial on the merits. *Id.* at 252, 254, 106 S.Ct. at 2511–12, 2513. The judge's inquiry asks "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Id.* at 252, 106 S.Ct. at 2512 (citation omitted). The judge must "bear in mind the actual quantum and quality of proof necessary to support [a verdict]." *Id.* at 254, 106 S.Ct. at 2513.

\*       \*       \*

Title VII of the Civil Rights Act of 1964 provides in relevant part:

It shall be an unlawful employment practice for an employer—

(1) ... to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex.

42 U.S.C. § 2000e–2(a). "With the goal of 'progressively ... sharpen[ing] the inquiry into the elusive factual question of intentional discrimination,' ... [the Supreme Court] in

*[McDonnell]* established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993). That model is referred to herein as the "Tripartite Framework."

In accordance with the Tripartite Framework, first, the plaintiff must establish a *prima facie* case of termination because of unlawful discrimination by showing that (1) the plaintiff belongs to a protected class; (2) the plaintiff was qualified for the position at the time of termination; (3) the plaintiff was terminated; and (4) after termination, the plaintiff's position was ultimately filled by someone outside of the protected class. *See St. Mary's,* 509 U.S. at 506–08, 113 S.Ct. at 2747. Second, the defendant must rebut the *prima facie* case by producing an explanation that the adverse action was taken for a legitimate, nondiscriminatory reason. *Id.* Third, the plaintiff must prove by a preponderance that the explanation is a pretext for discrimination, i.e., that the reason was false and that discrimination was the real reason. *Id.* at 515–17, 113 S.Ct. at 2752.

In light of the foregoing, believing the plaintiff's evidence and drawing all justifiable inferences in her favor, the Court concludes that no genuine issue of material fact exists and the defendant is entitled to judgment as a matter of law. The plaintiff cannot meet her burden of proving that the defendant intentionally discriminated against her because of her sex. More specifically, she cannot meet her burden of showing by a preponderance of evidence that the non-discriminatory reason proffered for her termination was a pretext for sex discrimination. Thus, while the first two parts of the Tripartite Framework have been satisfied in this case, the third part has not been satisfied.

**The Plaintiff Has Established the Elements of Her *Prima Facie* Case, thus Satisfying the First Part of the Tripartite Framework.**

There is no dispute that the plaintiff has met the first, second, and fourth elements of her *prima facie* discrimination case. As a woman, the plaintiff is a member of a pro-

tected class. Furthermore, she was terminated from her position as Director of Libraries at Howard University. Also, she was replaced by a man, a member outside the protected class.[1]

The defendant asserts, however, that the plaintiff has not established the third element of her *prima facie* case, that is, that she was qualified for her position. In support, the defendant cites the plaintiff's alleged unsatisfactory job performance and failure to follow directives.

While these reasons may in some cases be evidence that a person is not qualified for the position he or she holds, in this case, the plaintiff has submitted ample evidence that she is qualified for her former position. Her resume states that, before she was Director of Libraries at Howard, she was Chief Librarian and Professor at the City College of New York and Assistant University Librarian for Reference and Collection Development at Brown. She taught and lectured at several New York College Libraries. She holds a Bachelor of Arts in Government from Barnard College, where she was her class President; a Master of Science in Library Science, with honors, from Columbia; and a Doctor of Library Science from Columbia. Without detailing her qualifications further, the Court notes that the plaintiff's resume lists myriad experiences and publications.

The plaintiff has produced evidence that she is an extremely accomplished individual and also qualified for her position. In this regard, the Court notes that the plaintiff's three-year employment contract was renewed once by the University for another three-year term. The evidence cited by the defendant relating to her job performance pertains more to the reason her contract was not renewed a second time. In sum, the plaintiff has established her *prima facie* sex discrimination case and, therefore, has satisfied the first part of the Tripartite Framework.

**The Defendant Has Produced a Legitimate, Non–Discriminatory Reason for the Plaintiff's Termination from her Position, Thus Satisfying the Second Part of the Tripartite Framework.**

At the second step, the defendant is required to introduce evidence of a legitimate, nondiscriminatory reason for the plaintiff's termination. *St. Mary's*, 509 U.S. at 506–08, 113 S.Ct. at 2747. The defendant's *de minimis* burden at the second step of the Tripartite Framework clearly has been met here. Specifically, the defendant has sustained its burden by introducing evidence that the plaintiff was terminated for unsatisfactory job performance, disregarding University directives, causing dissension among employees, and misused University resources.[2] *See* Def's Mot. at Exh. 1.

**The Plaintiff Has Not Proffered Sufficient Evidence that, If Believed, Would Show that the Defendant's Articulated Reason for her Termination Was A Pretext For Sex Discrimination, thus the Third Part of the Tripartite Framework is Not Satisfied.**

At the third step, the plaintiff must produce sufficiently probative evidence to create a genuine issue "both that the reason [offered for her termination] was false, and that discrimination was the real reason." *St. Mary's*, 509 U.S. at 515–17, 113 S.Ct. at 2752. The plaintiff has not done so.

The defendant has articulated a non-discriminatory explanation for its action here, namely, it has asserted that the plaintiff was removed because she was performing poorly and failed to follow directives. In support of this explanation, the defendant has proffered evidence to demonstrate that the plaintiff was terminated because of these reasons by her immediate superior, Dr. Taylor, the then Interim Vice President for Academic Affairs, after discussion with and approval by Dr.

1. Dr. Taylor's affidavit states that the plaintiff's position is currently vacant and undergoing reclassification but that, since November, 1994, Mr. Mod Mekkawi, Assistant Director for Central Library Services, has assumed the responsibilities of the Director of University Libraries. Def's Mot. at Exh. 1. For the purposes of deciding the instant motion, the Court will assume that the plaintiff was indeed "replaced" by Mr. Mekkawi.

2. Because the defendant focuses primarily on the first two of the stated reasons, the Court shall focus only on those reasons.

Ladner, also a woman, and the then Interim President for Howard University.

The evidence proffered in support of the defendant's explanation includes an Affidavit of Dr. Taylor, the plaintiff's supervisor, detailing the events leading to the plaintiff's termination. Def's Mot. at Exh. 1. Also proffered are memoranda from Ms. Guyton, Ms. Willis, and Mr. Mekkawi to Ms. Michelle Wright, the Assistant Vice President for Human Resource Management, in which each employee complains of being excluded from the University's restructuring plan by the plaintiff in contradiction to the Interim President's directive that "all managerial staff are required to attend" meetings concerning the plan. Id. at Exh. 2. Also proffered is a memorandum from Ms. Wright to Dr. Taylor regarding the investigation of complaints against the plaintiff and recommending that the plaintiff be placed on administrative leave. The defendant also proffers a memorandum to the plaintiff from Dr. Taylor, requesting her to respond in writing to the charges, as well as the plaintiff's response to the charges.

■ Before addressing the merits of the plaintiff's Opposition, the Court shall address the plaintiff's Motion in limine, dated September 16, 1996, in which she seeks to: (1) limit "Items from the December 13, 1994 memorandum by Dr. Orlando Taylor" and "any and all items that occurred prior to his assumption of responsibility as Supervisor for Dr. Randall," as they are "prejudicial to the plaintiff"; and (2) limit "observations on Dr. Randall's performance to the period of supervision for Dr. Orlando Taylor." The plaintiff relies on Rule 602, Rules of Federal Evidence or lack of personal knowledge.

Dr. Taylor's memorandum provides the basis for his decision to remove the plaintiff from her position. The contents of the memorandum itself are not introduced for the purpose of proving the merits of each allegation against the plaintiff; rather, they explain the basis for Dr. Taylor's actions against the plaintiff. The "items" attached to the memorandum are admissible under Rule 803(6) of the Federal Rules of Evidence as records of regularly conducted activity.

Dr. Taylor, as the plaintiff's superior, relied upon his personal observations, the recommendations of the Office of Human Resource Management, memoranda from the plaintiff's personnel file, and his discussions with the Interim President to reach his conclusions and recommendations. He was entitled to do so, and the memorandum and exhibits thereto are admissible. Accordingly, the plaintiff's Motion in limine shall be denied.

*The Plaintiff Has Not Proffered Sufficient Evidence To Create A Genuine Issue As To The Falsity Of The Articulated Reason For Her Termination.*

Turning to the plaintiff's Opposition to summary judgment, the plaintiff argues that the reasons stated by the defendant for her termination were a pretext for discrimination. In support, the plaintiff relies upon her assertion that, in her view, she was performing satisfactorily.

At the outset, nearly the entirety of the plaintiff's Opposition amounts to contentions that University directives were ambiguous and that, as the plaintiff understood those directives, she complied with them and, hence, her termination was unfair. For example, regarding the alleged dissemination of an employment data form, the plaintiff does not contest that she disseminated such a form; rather, she alleges that she disseminated a form to her managers, and her managers, in turn, disseminated the forms to other personnel. Plaint's Opp. at 8.

■ The plaintiff's arguments in this regard miss the mark. Once the employer has articulated a non-discriminatory reason for its action, as it did here, the issue is not "the correctness or desirability of [the] reasons offered ... [but] whether the employer honestly believes in the reasons it offers." *Fischbach v. District of Columbia Dep't of Corrections,* 86 F.3d 1180 (D.C.Cir.1996) (quoting *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 373 (7th Cir.1992)). "It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. [The plaintiff] must show that the explanation given is a phony reason." *Id.* (quoting *Pignato v. American*

*Trans Air, Inc.*, 14 F.3d 342, 349 (9th Cir. 1994)). The plaintiff's disagreements regarding her employer's decision not to reappoint her does not show that the employer's reason was fabrication. The defendant has submitted a complete record documenting complaints against the defendant by three subordinates; an investigation by the Human Resources Department; and a decision by her superior to terminate her, based on the complaints and investigation, and after consultation with the Interim President. The plaintiff has not produced, as she must, evidence that the employer did not honestly believe in its stated reasons or had made an error in its decision too obvious to be unintentional. *See Fischbach*, 86 F.3d at 1183.

*The Plaintiff Has Not Proffered Sufficient Evidence To Create A Genuine Issue As To Whether The Real Reason For Her Termination Is Sex Discrimination.*

The plaintiff asserts that the real reason for her termination is sex discrimination. The plaintiff alleges that her subordinates, two women and one man, conspired to discriminate against her. She asserts that, although Mr. Mekkawi is minimally qualified for her former position, he is less qualified than she. The plaintiff cites specific examples to establish that she was treated unfairly vis-a-vis other employees. The plaintiff also proffers opinion testimony in support of her discrimination claim. Most of the plaintiff's evidence, however, is of little or no probative value.

■ According to the plaintiff, the three subordinates who complained against her "worked together over a substantial period of time to discredit and undermine [her], and to assist the University to replace her with a male, Mr. Mohamed Mekkawi." [3] Plaint's Opp. at 2. The success of the plaintiff's case depends on her posited theory that her subordinates—two of them women, like the plaintiff—conspired to discriminate against her. However, besides the plaintiff's specu-

lation, there is no evidence of collusion between these employees. Moreover, even granting that her subordinates were disgruntled and "conspired" against her, there is no proof that they did so based on her gender. Furthermore, the plaintiff's conspiracy theory would have to extend to encompass the Interim President of the University, the Vice President of the Office of Human Resource Management, and the Human Resources investigator [4], all of whom were women. The plaintiff's "conspiracy to discriminate theory" is only that—a theory, unsupported by any evidence.

■ In support of her claim that others were treated differently than she was, the plaintiff first makes a comparison between the University's treatment of the plaintiff and Mr. Mekkawi. First, the plaintiff points to disciplinary action taken for the unauthorized use of University funds. From the record, it appears that the University may have disciplined the plaintiff for the alleged purchase of an antique Japanese table using University funds. Mr. Mekkawi was disciplined by the plaintiff herself for the use of University funds when Mekkawi charged the expense of sending a telegram to a fellow employee to notify the employee of her impending termination. According to the plaintiff, Mekkawi's action was "excused" by the University. This comparison is of little, if any, probative value because it is not an equivalent use of unauthorized University funds and, thus, the plaintiff and Mr. Mekkawi were not similarly situated for the purposes of comparison.

■ The plaintiff also compares the University's treatment of her and Mr. Mekkawi with regard to requests for leave. Again, the plaintiff and Mr. Mekkawi were not similarly situated in this regard. The record shows that the plaintiff was given 23 days off in 1990 due to her mother's death. In 1992, she was advised by Dr. Ladner that her leave request for Christmas and New Year's was

**3.** These assertions alone establish discord between the plaintiff and her subordinates which may, in itself, have been sufficient reason for the University to terminate the plaintiff. The Court's purpose under Title VII is not to second-guess

employment decisions that are not based on sex discrimination.

**4.** Ms. Wright assigned a woman, Martha Barrow, from her office to investigate the complaints.

excessive. *Id.* Mr. Mekkawi requested leave for the purpose of visiting his aging and ill parents in Lebanon, whom he had not seen in three years. The record shows that the University was forced to intervene on Mekkawi's behalf because the plaintiff failed to act on Mekkawi's leave request for over 5 weeks. *Id.* at Exh. 8. This comparison is not probative because the plaintiff's request for holiday leave cannot be compared to Mekkawi's family medical emergency leave request. The plaintiff was granted leave for her mother's death.

As further support for her disparate treatment claim, the plaintiff alleges that the three subordinate complainants were "disgruntled staff all of whom benefited from my removal as Director." The plaintiff alleges that, although these "three persons engaged in insubordinate acts, disrespect to the Director, and violation of University rules," the University "condoned some of these practices." Of the three subordinates to whom the plaintiff refers, however, two were women. At best, therefore, the plaintiff has alleged that *both* men and women were treated differently than she was—undermining her claim that she was treated differently on the basis of her sex. *See Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 931 (7th Cir.1993) (summary judgment for employer affirmed; "a pattern, in which blacks sometimes do better than whites and sometimes do worse, being random with respect to race, is not evidence of racial discrimination"), *cert. denied,* ___ U.S. ___, 114 S.Ct. 1648, 128 L.Ed.2d 367 (1994).

Besides the inherent weaknesses in the plaintiff's comparisons between herself and other employees, these comparisons are largely irrelevant. The question at issue is, with respect to her termination, whether the plaintiff was treated differently than men who were similarly situated to the plaintiff. She has provided no evidence that a man similarly situated with respect to position, responsibility, work performance and the like, was not terminated while she was.

The plaintiff also proffers the affidavit testimony of Dr. Ilona H. Anderson, Acting Dean, Faculty Relations, The City College of CUNY. Dr. Anderson states in her affidavit

that "At present, all four of Howard University Libraries are headed by males," and "Since the time of its Charter in 1867, the number of women who have served as the Director of any Howard University library is negligible." Anderson Aff. ¶¶ 9–10. Dr. Anderson concludes that "there appears the possibility that some factor other than qualifications alone is operating in selecting and retaining directors to head the Libraries at Howard University." *Id.* at 2.

■ Although statistical evidence is unquestionably relevant in a Title VII case, it is appropriate to exclude such evidence with little or no probative value. *Carter v. Ball,* 33 F.3d 450, 456 (4th Cir.1994). According to this standard, Dr. Anderson's testimony must be excluded. First, Dr. Anderson's background is that of an administrator and teacher. There is nothing in her resume to indicate that she is qualified to provide statistical evidence of discriminatory practices, hiring or otherwise, at Howard University. Dr. Anderson is not qualified as an expert under Fed.R.Evid. 702. Moreover, Dr. Anderson's testimony is statistically insignificant because she provides no basis or methodology for her conclusions. For example, she does not disclose such information as the source of her factual assertions, the number of qualified applicants for librarian positions at Howard University and their gender ratio, and the promotion rate of women to men at Howard University. *See Carter,* 33 F.3d at 456 ("The mere absence of minority employees in upper-level positions does not suffice to prove ... discrimination without a comparison to the relevant labor pool."). Dr. Anderson's testimony is not in any measure helpful to a clear understanding of any material fact in issue under Fed.R.Evid. 701. Thus, Dr. Anderson's testimony cannot be credited as reliable, significant, or admissible.

■ As for the proffered testimony of Mr. Maureen Sullivan, Library Consultant, it states generally that women and minorities are under-represented in university staffs. Sullivan avers that there are "more opportunities today for women and minorities to be appointed to the position of Director at a research library[, however,] the pool of qualified applicants ... is small." Sullivan Aff. at

2. Again, the Court must exclude this evidence because it is meaningless. There is no showing of how this testimony is helpful or even relevant to the plaintiff's claim.

■ The plaintiff next argues that the fact that she was replaced by a "male subordinate with lesser qualifications" proves she was discriminated against by the defendant. It does not. The plaintiff has not shown that the reasons for her removal were phony. The University's decision to fill its vacancy with a male, in itself, does not prove discrimination. The plaintiff does not dispute that Mr. Mekkawi, who holds three graduate degrees, one post-graduate diploma, and has done doctoral studies, and who has worked at Howard University since 1972, moving progressively in the library administration, is at least minimally qualified for her former position. She admitted as much at the pretrial conference in this case.

■ The only evidence that supports the plaintiff's contention that the real reason for her termination was discrimination is the plaintiff's affidavit testimony that, on September 8, 1994, Dr. Taylor told the plaintiff "that he had been a member of [her] Search Committee when [she] was appointed in 1989. Then he said: 'You were not my preference, I preferred a male—Dr. Hiram Davis'." Plaint's Aff. at 5. The plaintiff then alleges that subsequently, she learned that Dr. Hiram Davis was a leading candidate in the 1995 search to replace the plaintiff. As to this statement, whether or not it is a sexist remark is questionable. The fact that Dr. Davis was a leading candidate in a later search tends to show that it was Dr. Davis *himself*, and not just *any* male, that Dr. Taylor focused upon as his preference. Drawing all inferences in the plaintiff's favor, however, and attributing sexism to this remark, this one statement falls far short of meeting the plaintiff's burden by a preponderance of the evidence that she was victim of sex discrimination in this case.[5] *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

The plaintiff also alleges in her affidavit the following:

> Dr. Taylor used a male, stereotypical sports analogy to explain why I was being reassigned form [sic] the University Libraries. He said he wanted to be proud of the Library again. He said: "Sometimes a good player or coach may be wrong for the team." He said it was time for a change; that I was not right for the team.

*Id.* at 5–6. The Court observes that a mere conversational illusion to sports is not sexist.

Believing the plaintiff's evidence and drawing all reasonable inferences in her favor, the Court must grant summary judgment in favor of the plaintiff. In the face of the evidence of record that the defendant terminated her for legitimate, non-discriminatory reasons, the plaintiff cannot show by a preponderance of the evidence that she was a victim of unlawful discrimination.

### CONCLUSION

For the foregoing reasons, the Court shall enter judgment in favor of the defendant in the above-captioned case. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

### ORDER

For the reasons set forth in the Court's Memorandum Opinion of even date herewith, it is, by the Court, this 21st day of October, 1996,

ORDERED that judgment shall be entered in favor of the defendant in the above-captioned case; and it is

FURTHER ORDERED that any and all extant Motions shall be, and hereby are, declared MOOT; and it is

FURTHER ORDERED that the trial date shall be, and hereby is, VACATED and that

---

5. The plaintiff also submitted the affidavits of Gertis Fenuku, former University employer, and Christine Renee Randall, the plaintiff's daughter, who both asserted that the plaintiff had told them that Dr. Taylor had said he preferred a male. This testimony is inadmissible hearsay.

this case shall be, and hereby is, DIS-MISSED from the dockets of this Court.