**Ernestine DANCY, Plaintiff,**

v.

**AMERICAN RED CROSS, Defendant.**

Civil Action No. 96–02594 (SS).

United States District Court,
District of Columbia.

July 28, 1997.

Joel Paul Bennett, Washington, DC, for Plaintiff.

Francis Joseph Nealon, Ballard, Spahr, Andrews & Ingersoll, Washington, DC, for Defendant.

*MEMORANDUM OPINION*

SPORKIN, District Judge.

This matter is before the Court on Defendant's motion for summary judgment and Plaintiff's opposition thereto. The Court heard oral argument on July 1, 1997.

Plaintiff filed her complaint on November 14, 1996 claiming that the Defendant American Red Cross terminated her employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and in violation of the Age Discrimination in Employment Act (hereinafter ADEA), codified at 29 U.S.C. § 621 *et seq.* In her complaint, Plaintiff specifically claims that she was dismissed: (1) because of her race; (2) because of her age; and (3) in retaliation for her complaint to the company about her alleged observation of discriminatory hiring and promotion practices.

### Factual Background

Plaintiff is a 41–year–old African–American woman. She was employed by Defendant for 24 years. For most of those years, she had an excellent employment record, consistently receiving favorable performance reviews and ultimately achieving the rank of Station Manager of the Kaiserslautern, Germany station.

In November 1992, Plaintiff filed a complaint with the Defendant's EEO officer, alleging discriminatory hiring and promotion practices. She grew frustrated by what she claims was the slow pace of the investigation, and decided to go outside the chain of command by contacting Defendant's president, Ms. Elizabeth Dole. Meanwhile, while her complaint was under investigation, Plaintiff's relationship with the Defendant deteriorated. To resolve the situation, a conference call was scheduled for June 7, 1993. The participants in this call were the Plaintiff and all of her supervisors—the very people against whom she had raised her allegations.

It is undisputed that Plaintiff delayed this conference call unnecessarily by being 45 minutes late, and then offered a false reason for her lateness. Both parties also agree that the discussion grew heated and was generally unproductive. On June 11, 1993 Plaintiff's supervisor, Ms. Sue Richter, sent Plaintiff a letter criticizing her behavior during the June 7 conference call. In the letter, Ms. Richter informed Plaintiff that her behavior had "bordered" on insubordination and that "if there [was] a repeat of that type of behavior ... disciplinary action [would] be taken." Plaintiff responded the same day with a letter apologizing for her behavior.

Shortly after this call and the ensuing exchange of letters, Ms. Richter discovered some improprieties in Plaintiff's personnel file. Specifically, Plaintiff had violated one of Defendant's policies by moving into a new apartment without providing Defendant with a copy of the lease. Citing this violation and her alleged insubordinate behavior at the June 7 conference call, Defendant terminated Plaintiff on July 7, 1993.[1] Plaintiff was not given a hearing to explain these issues, and was given less than 24 hours to leave. After being terminated, Plaintiff was replaced first by a Hispanic male and then a Caucasian female.

### Summary Judgment Standards

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Mere allegations or denials of the adverse party's pleadings are not enough to prevent issuance of summary judgment. The adverse party's response to the summary judgment motion must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

The Supreme Court set forth the governing standards for issuance of summary judgment in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Celotex,* the Supreme Court recognized the vital need for summary judgment motions to the fair and efficient functioning of the justice system:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of

---

1. The Defendant also made reference to some workplace disputes Plaintiff had had with her two most recent supervisors.

the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed. Rule Civ. P. 1 . . . .

Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327, 106 S.Ct. at 2555 (citation omitted).

The plaintiff, as the non-moving party, is "required to provide evidence that would permit a reasonable jury to find" in her favor. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987) (per curiam) (*citing Celotex, supra* ). The moving party is entitled to summary judgment where "the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex* at 323, 106 S.Ct. at 2552. Any factual assertions contained in affidavits and other evidence in support of the moving party's motion for summary judgment shall be accepted as true unless the facts are controverted by the non-moving party through affidavits or other documentary evidence. See Local Rule 108(h).

In resolving the summary judgment motion, all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). The inferences, however, must be reasonable, and the non-moving party can only defeat a motion for summary judgment by responding with some factual showing to create a genuine issue of material fact. *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993).

## ANALYSIS & DECISION

In order to succeed under both Title VII and the ADEA, Plaintiff must make a prima facie case of discrimination. If she can do so,

Defendant must provide legitimate, nondiscriminatory reasons for taking the adverse employment action. It is then Plaintiff's burden to show that these reasons are pretextual. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

### 1. *Prima facie case*

#### a. *Age Discrimination Under the ADEA*

■ To make out a prima facie case of age discrimination, Plaintiff has to show that: (1) she is a member of the statutorily protected age group; (2) she is qualified for the position; (3) she was discharged; and (4) the position remained open and was subsequently filled by a younger person. *Goss v. George Washington Univ.,* 942 F.Supp. 659, 663 (D.D.C.1996) (*citing Hayman v. Nat'l Academy of Sciences,* 23 F.3d 535, 537 (D.C.Cir.1994)).

■ Plaintiff has not provided any information about the age of her replacement and, therefore, has failed to meet her burden on the fourth element of the prima facie case. Plaintiff contends that her proof of a "general pattern and practice of getting rid of older employees," Pl.'s Reply at 14, is sufficient for establishing a prima facie case. The evidence presented in support of this claim, however, consists only of Plaintiff's vague, unsubstantiated allegations and is, therefore, insufficient. Accordingly, the Court will grant summary judgment for Defendant with respect to Plaintiff's age discrimination claim.

#### b. *Race Discrimination Under Title VII*

■ To establish a prima facie case of race discrimination under Title VII, Plaintiff must show that: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was terminated; and (4) she was replaced by someone outside the protected class. *Randall v. Howard University,* 941 F.Supp. 206, 211 (D.D.C.1996).

■ The Plaintiff has met her burden on her race claim. She is African–American, was qualified for the position she held, was

terminated, and was replaced by non-members of her class—first, a Hispanic male and then a Caucasian female.

### c. *Retaliation under Title VII*

■ Section 704(a) of Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). To make out her prima facie case under section 704(a), the Plaintiff must show: (1) that she engaged in activity protected by the statute; (2) that her employer engaged in conduct having an adverse impact on her; and (3) that the adverse action was causally related to her exercise of protected rights. *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1423 (D.C.Cir.1988).

Plaintiff has clearly made out the first two elements of a prima facie case of retaliation. She engaged in protected activity by filing a complaint with Defendant's EEO officer and was subsequently terminated from her position. Defendant claims that Plaintiff's complaint fails on the third element of this test because the June 7 conference call broke the causal link between Plaintiff's protected activity and her termination. The Court rejects this contention. The underlying purpose of the conference call was to discuss Plaintiff's pursuance of her EEO complaint. The people to whom she was allegedly insubordinate were the very people whose behavior had prompted her complaint. The call did not, therefore, break the causal chain; if anything, it reaffirmed it.

Moreover, the close proximity between the time Plaintiff made her allegations and her termination (just nine months), considered against a background of 24 years of satisfactory performance. belies Defendant's claim that the telephone call broke the causal chain. *See Klein v. Derwinski*, 869 F.Supp. 4 (D.D.C.1994).

### 2. *Production of legitimate, non-discriminatory reasons*

Consistent with the scheme established by *McDonnell Douglas, supra*, Defendant has successfully responded to both the retaliation and race discrimination claims by asserting legitimate, non-discriminatory reasons for Plaintiff's termination. Defendant claims that Plaintiff was terminated for three reasons: (1) her insubordination at the June 7 conference call; (2) her violation of Defendant's housing policy; and (3) her problems with previous supervisors. It is Plaintiff's burden to show that these reasons are pretext for race discrimination and retaliation.

### 3. *Proof of Pretext*

■ To prove that the legitimate, non-discriminatory reasons offered by an employer are pretextual, the employee must offer evidence that those reasons are false, and that the real reason was discriminatory. *Randall v. Howard University*, 941 F.Supp. at 211. Plaintiff has offered evidence of both.

First, she has directly denied that her behavior was insubordinate during the June 7 conference call. Defendant's contention that Plaintiff's letter apologizing for her behavior amounts to an admission that she was insubordinate is not persuasive. Plaintiff, at the time, was still employed by Defendant and was trying to resolve the problems with her supervisors. She acknowledged in that letter that her behavior was "inappropriate," but this is not necessarily the same as being "insubordinate." Certainly, Plaintiff's effort to make peace with her supervisor is not a waiver of her right to prove pretext. In addition, Plaintiff has produced evidence to show that the other two asserted reasons for her termination are false. She has produced sworn statements from co-workers claiming that there were no observed problems between Plaintiff and previous supervisors. She also asserts that her violation of Defendant's housing policy was merely a technical violation that is not typically a firing offense.

Second, Plaintiff has offered evidence that the real reason she was fired was both discriminatory and retaliative. She has offered evidence of disparate treatment between her-

self and a similarly situated white employee who had not engaged in a protected activity. This white employee was also accused of having poor relations with her supervisors and with violating Defendant's policies. Defendant undertook an extensive investigation of the allegations and gave the employee an opportunity to defend herself before imposing any disciplinary sanction. When Defendant did discipline this other employee, Defendant did not terminate her, but instead placed her on probation for a 90–day period. This treatment contrasts sharply with the manner in which Plaintiff's case was handled. That an employee can provide an organization with 24 years of service and then be summarily dismissed without a hearing or even a day's notice is powerful evidence that Defendant may have had questionable motives. Defendant's contention that these issues are irrelevant because this is not a "contract" case is not persuasive.

## CONCLUSION

Accordingly, the Court finds that Plaintiff has not made a prima facie case of age discrimination but has demonstrated that genuine questions of material fact exist on her claims of race discrimination and retaliation. Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's ADEA claim, but denies Defendant's motion on Plaintiff's Title VII claims.