**Hung Van DANG, Plaintiff,**

v.

**INN AT FOGGY BOTTOM and Ida Doe, individually and as Housekeeping Supervisor, Defendants.**

**No. Civ.A. 97–2884 (TAF).**

United States District Court, District of Columbia.

Feb. 18, 2000.

Hendrith Vanlon Smith, Sr., Hyattsville, MD, for Plaintiff.

Jonathan W. Greenbaum, Adrian V. Nelson, II, Krupin Greenbaum & O'Brien, Washington, DC, for Defendant.

### MEMORANDUM—OPINION

FLANNERY, District Judge.

In this action, plaintiff Hung Van Dang ("Dang") sues defendants Inn at Foggy Bottom (the "Inn" or "defendant") and Ida Doe under 42 U.S.C. § 1981 and D.C.Code § 1–2512(a), alleging that he was discharged from his position because he is Vietnamese and Asian. Pending before the Court is a motion by the Inn for summary judgment pursuant to Fed. R.Civ.P. 56. For the reasons discussed, defendant's motion is denied.

### I. Background

Dang was hired by the Inn as a houseman in October of 1992. A houseman is responsible for a wide variety of housekeeping functions and is occasionally asked to perform tasks in other areas. Between October of 1992 and May of 1996, Dang's supervisor was Pari Dowlatdad ("Dowlatdad"). During this same period, plaintiff received several awards praising the quality of his work.

In May of 1996, Dowlatdad was replaced by Ida Jonak ("Jonak") as plaintiff's supervisor. From the time Jonak commenced her employment at the Inn, Jonak's relationship with plaintiff was not friendly. Jonak was "always upset" with him and never returned his pleasantries. Pl.Dep. at 231. At some subsequent time, Jonak reduced his working hours below that of other housemen with less seniority. Dang Dep. at 90, 143. In response to this reduction, plaintiff took a second job working nights as a houseman at a neighboring Howard Johnson's Inn. As a result, during this time plaintiff was "very tired." Dang Dep. at 27, 205–06.

Defendant alleges that as a result of plaintiff's weariness and because of increased performance standards Jonak imposed to obtain improved service to guests, plaintiff failed to adequately perform his duties on several occasions in June and July. Defendant alleges that plaintiff was given a verbal warning on June 28, 1996 for refusing a supervisor's instruction to bring a crib up to a guest, a written warning for failure to mop the floors on July 5, 1996, and then a second written warning

for failure to polish the brass on July 12, 1996. Plaintiff alleges that he did bring the crib up and denies having received any warnings, verbal or written.

On August 29, 1996, plaintiff was called into an office at the Inn and formally discharged from his position by Jonak and Kia Sechrist, the General Manager. His discharge was allegedly for having spilled coffee on the rug in the continental breakfast room, for failing to report the spill or clean it and for failing to properly prepare the breakfast room by turning on the lights and the air conditioner. The spill was allegedly discovered by another employee, Darryl Griffin ("Griffin"), the front desk manager. Griffin testifies that later that day, plaintiff admitted to him that he had spilled the coffee and failed to either clean it up or report it. Plaintiff denies having either spilled the coffee or having admitted spilling it. Defendants allege that the spill, which they state required costly replacement of the carpet, was sufficiently severe to warrant discharge.

## II. Discussion

### A. Standard of Review

Under Fed.R.Civ.P. 56, a party may move for summary judgment if the record indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Material facts are those which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the

non-moving party must demonstrate that a genuine dispute exists, and provide evidence sufficient for a reasonable trier-of-fact to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505. A court making a summary judgment determination must view the facts in a light most favorable to the non-movant, giving the non-movant the benefit of all reasonable inferences derived from the evidence in the record. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. The Court proceeds under this standard to determine whether plaintiff has presented sufficient evidence of a valid claim.

### B. Claim of Race Discrimination Under Section 1981 and D.C.Code § 1–2512(a)

■ Claims of race discrimination in employment brought under 42 U.S.C. § 1981 and D.C.Code § 1–2512(a) are both analyzed in fashion similar to claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq. See Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1553 (D.C.Cir.1997).[1] Plaintiff may establish his claim based on either direct evidence of discrimination or the three-part framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) for proving a circumstantial case. *See Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996); *Kalekiristos v. CTF Hotel Management Corp.*, 958 F.Supp. 641, 665 (D.D.C.1997); *Saunders v. George Washington University*, 768 F.Supp. 854, 865 (D.D.C.1991).

---

**1.** Because section 1981 extends only to claims of racial discrimination, a claim based of discrimination based solely on nation of origin may not be brought under this provision. *See Kidane v. Northwest Airlines, Inc.*, 41 F.Supp.2d 12, 16 (D.D.C.1999) (citing *St. Francis College v. Al–Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987)). However, in this context, racial discrimination is construed broadly to include claims of discrimination based on national "ancestry or ethnic characteristics," i.e. the identifiable racial or ethnic characteristics associated with a

particular national origin, but not to a claim based solely on the national origin itself. *St. Francis College*, 481 U.S. at 613, 107 S.Ct. 2022; *see also id.* at 614, 107 S.Ct. 2022 (Brennan, J., concurring) ("discrimination based on *birthplace alone* is insufficient to state a claim under § 1981") (emphasis in original); *Wesley v. Howard University*, 3 F.Supp.2d 1, 3 (D.D.C.1998). Thus, to the extent that plaintiff alleges a claim of discrimination based on the racial or ethnic characteristics associated with Vietnamese persons, the claim is cognizable under § 1981.

## C. Direct Evidence

Direct evidence of discrimination is evidence of conduct which reflects a discriminatory animus "on its face." *See Evans v. Atwood*, 38 F.Supp.2d 25, 30 (D.D.C.1999) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)). Direct evidence does not include stray remarks in the workplace, even if made by decision-makers, where the remarks are unrelated to the decisional process itself. *See Siragy v. Georgetown University*, No. Civ.A. 97–2557, 1999 WL 767831, *6 (D.D.C. Aug.20, 1999) (citing *Garrett v. Lujan*, 799 F.Supp. 198, 200, 202 (D.D.C.1992); *Ayala–Gerena*, 95 F.3d at 95); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J.) (discriminatory "statements by decision makers unrelated to the decisional process" are not direct evidence of discrimination). Instead, there must be a nexus between the remark and the adverse employment decision. *See Kalekiristos v. CTF Hotel Management Corp.*, 958 F.Supp. 641, 665 (D.D.C.1997).

Plaintiff points to three excerpts of his testimony as direct evidence of discrimination. First, plaintiff testified that shortly after Jonak arrived, she asked plaintiff where he was from and he answered, "From Vietnam." Pl.Dep. at 230. Second, plaintiff testified that on "a couple" of occasions, Jonak interrupted plaintiff when he was speaking Vietnamese to another Vietnamese employee and told plaintiff to speak English. Pl.Dep. at 69–70, 230.[2] Third, plaintiff testified that Jonak was "always upset" or "angry" with him and never returned his pleasantries. Pl.Dep. at 75–76, 231.[3]

The evidence cited is not direct evidence of discrimination. First, the alleged lack of courteousness by Jonak, her inquiry into plaintiff's national origin and her direction that plaintiff speak English in the workplace do not facially reflect racial animus. Indeed, plaintiff concedes that neither Jonak nor any other supervisor ever said anything disparaging about his being Vietnamese. Pl.Dep. at 68–69. Second, the remarks are clearly stray remarks unrelated to the decisional process of plaintiff's discharge. Plaintiff has therefore not established his claim with direct evidence.

## D. McDonnell Douglas

Under this familiar framework, plaintiff bears the initial burden of establishing a prima facie case of prohibited discrimination. *See Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1077 (D.C.Cir.1999). Once he has done so, a presumption of discrimination arises and the burden shifts to the employer to articulate legitimate, nondiscriminatory reasons for the challenged decision. *See Aka v. Washington Hosp. Center*, 156 F.3d 1284, 1288 (D.C.Cir.1998) (en banc). If the employer succeeds in presenting such reasons, the presumption of discrimination raised by the prima facie showing is rebutted and drops from the case. *See Hall*, 175 F.3d at 1078. The burden then shifts back to the plaintiff to demonstrate that the proffered reasons are a pretext for discrimination, i.e., that the employer's explanation is false and that the real reason for the action was unlawful discrimination. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Aka, id.* at 1288, n. 3. The ultimate burden of persuasion remains at all times with the plaintiff. *See Hall*, 175 F.3d at 1078.

**2.** Plaintiff testified:
> A couple days she don't like me to speak in Vietnam. Like I talk and she say, "Oh, no. English. English." I say "I know English. United States English. But my language I have to talk it."

Pl.Dep. at 230.

**3.** Plaintiff testified:

> I saw her sometime she never happy with me; always she upset. I don't understand. When she came in she upset always with me. All the time. She look at my face, she upset. Never smile. I say "Hello. Good morning," everything. She never answer.

Pl.Dep. at 231.

■ To establish a prima facie case of discriminatory discharge, plaintiff must establish that he belonged to a protected class, that he performed at or near the level legitimately expected by his employer, that he was discharged and that he was replaced by a person outside the protected class or, alternatively, that the position remained open. *See Neuren v. Adduci, Mastriani, Meeks & Schill,* 43 F.3d 1507, 1512 (D.C.Cir.1995); *Kidane,* 41 F.Supp.2d at 17.

Defendant argues that plaintiff has failed to raise a question of fact with regard to the second element, that he was performing at or near the level legitimately expected by his employer. However, inadequate performance is also defendant's proffered legitimate reason for discharging the plaintiff. Thus, the issue at the prima facie stage and at the third stage of proving pretext are identical: plaintiff must prove that defendant's allegations of inadequate performance are false. Accordingly, the Court will assume that a prima facie case is established and proceed to analyze whether plaintiff has demonstrated that defendant's proffered reason is a pretext for discrimination. *Cf. MacDonald v. Eastern Wyoming Mental Health Center,* 941 F.2d 1115, 1119 (10th Cir.1991) (holding that a court should not "consider a defendant's proffered reasons for discharge in assessing the existence of a prima facie case.").

As evidence that plaintiff was discharged for inadequate performance, defendant asserts that there were four instances between June and August of 1996 in which plaintiff failed to properly perform his work obligations. First, the Inn alleges that on or about June 28, 1996, plaintiff was instructed by Jonak to bring a crib up to a guest, refused to do so, and was given a verbal warning. *See* Def.Ex. 10; Def.Ex. 6 at ¶ 7 (testimony of Margaret Cooper that Dang refused to bring crib to guest and that she was ultimately required to do so herself). Defendant alleges that on July 5, 1996, plaintiff received a

written warning for failing to mop the stairwell between the 8th floor and the basement. Def.Ex. 10. Defendant alleges that on July 12, 1996, plaintiff received a second written warning for failure to polish the Inn's elevator and the brass on each floor of the hotel. Def. Ex. 10. Finally, defendant alleges that on August 29, 1999, Griffin, the Inn's Front Desk Manager (also referred to as an Assistant General Manager), discovered a coffee stain on a two square-foot section of the carpet in the continental breakfast room. Def. Ex. 10; Griffin Declaration ¶ 9. Griffin alleges that later that day, plaintiff admitted that he had spilled the coffee and had failed to either clean up the spill or report it. This was the critical event which defendant most heavily relies on, emphasizing that because of the cost of repairs and plaintiff's failure to report the error, it was a severe enough problem to warrant plaintiff's discharge.

In his deposition, plaintiff directly contradicted many of defendant's allegations. Plaintiff alleged that he did not refuse to take the crib up, that he in fact did take a crib up to a guest, and that he never received any verbal or written warnings before the date of his discharge. He admitted that a houseman is responsible for cleaning up coffee spills. However, he denied spilling coffee, denied that he had admitted spilling coffee to Griffin and stated that he was not aware of the coffee spill until he was notified of his discharge. Pl. Dep. at 224–26. He further stated that although he was responsible for preparing the continental breakfast, he was not responsible for turning on the lights or the air conditioner. Pl.Dep. at 126–27.

Defendant argues that plaintiff's testimony consists of conclusory denials which are insufficient to create a question of fact. However, plaintiff's testimony as to his own actions (or inactions) are clearly admissible as statements of factual matters within plaintiff's personal knowledge. Fed.R.Evid. 602.

**44**

■ Other evidence in the record does undermine plaintiff's pretext case to some extent. Specifically, after his discharge, plaintiff handwrote a letter in Vietnamese complaining about the circumstances of his discharge. Pl.Dep. at 107. He then had a friend named Men type the letter up. Pl.Dep. at 95. Defendant has submitted a typed letter, dated December 2, 1996 and addressed to the president of George Washington University, purported to be Men's typed translation of plaintiff's letter. *See* Def.Ex. 26.[4] Although plaintiff does not remember signing the typed letter in evidence, he concedes that the signature at the end of the typed letter is his. Pl.Dep. at 97, 103.[5] The letter discusses at length his employment and his discharge, and states, in part:

> I received four warnings which were used as cause for my firing. These warnings best highlight the unjust manner in which I was fired. I was a model employee for four years and an employee of the year for 1995, only to be faulted for doing something I was never told to do, or failing to remove a coffee stain when both me and my manager could not scrub it clean.

Def.Ex. 12. Plaintiff's assertions in the letter directly contradict his present testimony that he never received any warnings and that he knew nothing of the coffee stain prior to his termination.

■ However, even assuming that the statements of plaintiff reflected in the letter would be taken by any reasonable trier-of-fact as admissions, those statements do not contradict plaintiff's current testimony in several key respects. Although the letter refers to four warnings, thus arguably establishing that he did in fact receive those warnings, there is no admission that he actually did the things for which he was warned. Critically, there is no admission that he failed to take a crib up to a guest when he was told to, and thus his testimony that he did take the crib up creates a question of fact. Further, and even more critically, although the letter arguably establishes that plaintiff knew of the coffee spill and attempted to clean it up prior to his termination, the letter does not state that he either spilled the coffee or admitted doing so. Thus, plaintiff's denials on those points again create questions of fact. Whether he admitted spilling the coffee is particularly

4. As an initial matter, the letter arguably presents a question of hearsay. Hearsay is a statement, other than one made by a declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Fed.R.Evid. 801(c). Here, the letter, as a written translation by Men of a letter written by plaintiff, is two steps removed from the original declarant, being the plaintiff. Further, it is clear that it is being offered to prove the truth of the matters asserted. The Court finds, however, that this "double hearsay" is admissible under the Federal Rules of Evidence because both the original letter and the translation are subject to exclusions or exceptions from the hearsay rule. *See* Fed.R.Evid. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule. . . .").

Plaintiff's own statements, offered against him, are excluded from the hearsay rule because they are party admissions. *See* Fed. R.Evid. 801(d)(2)(A) (excluding party's own statement, in either an individual or represen-

tative capacity). Similarly, Men's translation, made at plaintiff's behest and then signed by plaintiff, is excluded from the hearsay definition because it is a "statement by a person authorized by the party to make a statement concerning the subject. . . ." Fed.R.Evid. 801(d)(2)(B), (C). Alternatively, Men's translation is admissible under the residual exception, Fed.R.Evid. 807. Rule 807 is a catchall exception to the hearsay rule which applies where the declarant is unavailable, the statements are accompanied by circumstantial guarantees of trustworthiness, are offered to prove a material fact and are more probative of that fact than any other evidence. *Smith v. Pena*, No. CIV.A. 93–0281, 1998 WL 164774, *11 (D.D.C. March 31, 1998). Here, Men's whereabouts are unknown, Pl.Dep. at 96, 108, and the circumstances, including the clarity of the translation and the complete absence of any motive on Men's part to fabricate, provide sufficient guarantees of trustworthiness.

5. At oral argument, plaintiff's counsel conceded the authenticity of the typed letter. *See* also Dang Dep. at 101.

critical because the direct conflict in testimony between plaintiff and Griffin can only be resolved by determining the credibility of these witnesses. Which witness is found to tell the truth on this matter will then substantially resolve whether the proffered basis for plaintiff's termination was pretextual.

It is well-established that resolving credibility questions is beyond the province of the Court. *See Greene v. Dalton,* 164 F.3d 671, 674 (D.C.Cir.1999) ("the credibility of a witness is the exclusive domain of the finder of fact."). This rule applies even assuming that plaintiff's letter is sufficient to disprove plaintiff's sworn testimony at several points. *See id.* (truth of statements by non-movant must be assumed "even when the court entertains grave doubts about [the party's statements]."). Simply put, having run into a credibility question, the Court must consider the plaintiff's version of relevant events to be true. Thus, for purposes of this motion, plaintiff has established that he did take the crib up, and that he did not spill the coffee or admit doing so (and thus, that defendant's witnesses are not telling the truth on these points). As a consequence, both plaintiff's prima facie case and proof of pretext are established.

In the face of this conclusion, the Court must deny defendant's motion for summary judgment. Proof of pretext in a discrimination case is of "considerable evidentiary significance" to the ultimate question of intentional discrimination. *Aka,* 156 F.3d at 1292. Together with a prima facie case of discriminatory motivation, a finding that defendant's proffered reason is false will generally be sufficient to justify submitting the case to the trier-of-fact unless the evidence of pretext itself points to a reason other than discrimination or if, in light of other evidence in the record, no reasonable trier-of-fact could find for the plaintiff. As example of the latter circumstance, the D.C. Circuit pointed to a case where the employer's workforce had a substantial number of employees of plaintiff's race and the person alleged to have acted with discriminatory intent was also of plaintiff's race.

Neither circumstances is present here. Plaintiff's evidence of pretext consists of direct denials that he engaged in the conduct alleged, and thus do not point to some reason other than discrimination. Further, Jonak is Caucasian, not Vietnamese, and there is no evidence of substantial numbers of Vietnamese in the Inn's workforce. *See* Sechrist Dep. at 21–22 (indicating that there were "two or three" Vietnamese workers in the housekeeping department).

Further, even if further evidence of discrimination is required, summary judgment would not be warranted because there is at least some additional evidence. Plaintiff has offered evidence that, at least a week before his discharge, his working hours per week were reduced and that other non-Vietnamese workers also employed as Housemen but with less seniority were given more hours than he was.

Defendant argues that the reduction in plaintiff's hours is not evidence of racial discrimination because the employees who were allegedly favored over him, Khalid Pervaid and Ikram Shah, were both Pakistani and thus also members of a racial minority. Defendant asserts that no inference of racial discrimination may be drawn from discriminatory treatment between two racial minorities, even if they are not the same race.

■ However, the cases defendant relies upon involved instances where discharged minority employees were replaced not merely by another minority but by one of identical race. *See Pollard v. Azcon Corp.,* 904 F.Supp. 762, 770 (N.D.Ill.1995) (no inference of discrimination where African–American replaced by another African–American); *Lawson v. Getty Terminals Corp.,* 866 F.Supp. 793, 802 (S.D.N.Y. 1994) (same); *see also Kidane,* 41 F.Supp.2d at 17 (plaintiff failed to raise inference of discrimination because he was "replaced ... by members of his own

race."). By contrast, at least one court in this Circuit has found an inference of discrimination raised by the replacement of one minority by another of a different race. *See Dancy v. American Red Cross,* 972 F.Supp. 1, 3–4 (D.D.C.1997) (inference of discrimination raised where African–American was replaced by Hispanic). This comports with the construction of the prima facie test which many courts apply, requiring plaintiff to show that the employer favored another person "outside the protected class." *See, e.g., Kalekiristos,* 958 F.Supp. at 668. Therefore, the Court rejects defendant's interpretation, and follows the *Dancy* court in concluding that evidence that an employer favored other racial minorities over Vietnamese does constitute some evidence of unlawful discrimination.

Given this additional evidence and the substantial weight to be accorded plaintiff's demonstration of pretext, the Court finds that plaintiff has presented a sufficient case to defeat defendant's motion.

### III. Conclusion

Defendant's motion for summary judgment is denied. An appropriate order will follow.