Marvin DALTON, d/b/a Dalton
Enterprises, Inc.,
Plaintiff,

v.

AVIS RENT A CAR SYSTEM,
INC., Defendant.

No. 1:03 CV 00535.

United States District Court,
M.D. North Carolina.

Sept. 2, 2004.

Romallus O. Murphy, Greensboro, NC, for Plaintiff.

Mack Sperling, Brooks Pierce Mclendon Humphrey & Leonard, Greensboro, NC, for Defendant.

## MEMORANDUM OPINION

OSTEEN, District Judge.

Plaintiff Marvin Dalton, doing business as Dalton Enterprises, Inc., has filed suit against Defendant Avis Rent a Car System, Inc. ("Avis"). Plaintiff alleges that Defendant terminated his Agency Operating Agreement because of illegal discrimination on the basis of race, in violation of 42 U.S.C. § 1981. This matter is now before the court on Defendant's Motion for

Summary Judgment. For the reasons set forth herein, Defendant's Motion for Summary Judgment will be granted.

## I. BACKGROUND

The following facts are stated in the light most favorable to Plaintiff.

In the spring of 2000, Plaintiff, a black male, responded to a newspaper advertisement seeking an operator for Avis' Smith Reynolds Airport location in Winston–Salem, North Carolina. After reviewing Plaintiff's résumé, Avis assigned Robert Haskell, manager of the Avis site at the Piedmont Triad International Airport in Greensboro, North Carolina, to interview Plaintiff for the position. After Plaintiff interviewed with Haskell, he heard nothing from Avis or Haskell.

In the spring of 2001, Plaintiff saw a reprint of the same Avis newspaper advertisement. Plaintiff re-submitted his résumé and was interviewed by Scott Hendricks, Avis' District Manager in Raleigh, North Carolina. Plaintiff was hired as an independent commissioned operator on September 1, 2001, and signed an Agency Operator Agreement ("Agreement") with Avis for the Smith Reynolds Airport location.[1]

Haskell trained Plaintiff and offered to assist him in getting started. Plaintiff, however, alleges that he actually received very little support from Haskell and that Haskell engaged in various activities harmful to Plaintiff's business,[2] including applying unspecified discriminatory standards to Plaintiff not applied to white Avis agency operators. Plaintiff reported his concerns regarding Haskell to Hendricks and the relationship improved between Plaintiff and Haskell for a time. Nonetheless, after Hendricks left Avis in May 2002, Plaintiff alleges that Haskell's mistreatment started again and continued until Plaintiff's termination. On May 19, 2003, Avis gave Plaintiff a 30–day notice of termination, pursuant to the Agreement.[3] The notice provided:

> Please note that while Avis need not establish any reason for its decision to terminate your Agreement, there have been numerous violations of Avis' policies and procedures are [sic] your Location. Said violations include, but are not limited to, the failure to ensure that all rental vehicles and the Location are clean and present an image consistent with Avis' standards. You have failed to follow Avis policies on numerous rentals. Avis has previously pointed out many of these problems to you only to have its warnings unheeded.

(Compl.Ex. 1.)

Plaintiff filed suit on June 11, 2003, alleging that Avis canceled the Agreement

---

1. The Agreement provided that Avis would furnish Plaintiff with rental vehicles, facilities, and proprietary products and information necessary for Plaintiff to rent automobiles to the public under the Avis name. Plaintiff was compensated by a commission of 15 percent of the rental and mileage charges at the location and additional percentages of other fees and services, all of which were reduced by a fleet surcharge paid to Avis. Plaintiff also paid a nominal monthly facility charge to Avis and was responsible for his own operational costs.

2. The Agreement required the Avis location in Greensboro to provide some cars for Plaintiff to rent out of the Winston–Salem location.

Plaintiff alleges that Haskell refused to send him cars, sent dirty cars, and prohibited others from helping Plaintiff receive cars. Plaintiff also alleges that Haskell constantly changed rules and policies and ran up rates at the Winston–Salem location to make it hard for Plaintiff to compete.

3. The Agreement provided at paragraph 5.b. that "[e]ither party may terminate this Agreement at any time based upon its own business reasons and objectives, notwithstanding that the other party is not then in default of its obligations hereunder, by giving the other party written notice of termination at least thirty (30) days in advance." (Compl.Ex. 1.)

because of his race, in violation of 42 U.S.C. § 1981 (§ "1981"). Upon Plaintiff's *ex parte* motion, the court granted a temporary restraining order on June 13, 2003, preserving the status quo. The court further ordered a hearing set for June 23, 2003, to determine whether a preliminary injunction was appropriate. After considering the documents submitted and arguments made by the parties at the hearing, the court ruled that an injunction was not warranted.[4]

## II. STANDARD OF REVIEW

Summary judgment is appropriate when an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that there is no genuine issue of material fact, thus entitling the moving party to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the moving party has met that burden, the nonmoving party must then persuade the court that a genuine issue remains for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, there must be more than just a factual dispute; the fact in question must be material and the dispute must be genuine. *See* Fed R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Although the court must view the facts in the light most favorable to the nonmovant, *see Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513, "bare allegations unsup-

ported by legally competent evidence do not give rise to a genuine dispute of material fact." *Solis v. Prince George's County*, 153 F.Supp.2d 793, 807 (D.Md.2001). Summary judgment should be granted unless a reasonable jury could return a verdict in favor of the nonmovant on the evidence presented. *McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 719 (4th Cir. 2003) (citing *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10).

## III. ANALYSIS

Plaintiff alleges that Avis' decision to terminate the Agreement was based on race in violation of § 1981. Section 1981 outlaws race discrimination in the making and enforcement of private contracts. The statute provides that "[a]ll persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). This right extends, for example, to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b).

■ A cause of action for employment discrimination is the same whether under § 1981 or Title VII of the Civil Rights Act of 1964 ("Title VII").[5] *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 n. 7 (4th Cir.2002); *Gairola v. Commonwealth of Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir.1985). Therefore, because Plaintiff presents no direct evidence of discrimination,[6] his claim is subject to the

---

4. District Court Judge Beaty found that, should Plaintiff prevail on his discrimination claim, his injuries could be properly redressed through traditional legal remedies and reinstatement. (Mem. Op. Order July 24, 2003 at 8.)

5. Title VII prohibits discrimination in the context of an employer-employee relationship. *See* 42 U.S.C. § 2000e *et seq.*

6. At the hearing on the preliminary injunction, Plaintiff, when asked about the evidence showing discrimination, conceded that "we have no direct proof of that.... we've only got circumstantial evidence." (Tr. Hr'g Mot. Prel. Inj. at 3–4.)

familiar burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. Under the *McDonnell Douglas* scheme, for Plaintiff to prevail on his discrimination claim, he must first establish a prima facie case of race discrimination. *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir.2001) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2742, 125 L.Ed.2d 407 (1993)). To establish a prima facie case of discriminatory termination under § 1981,[7] Plaintiff must show that: (1) he is a member of a protected class; (2) his contract was terminated; (3) at the time of the termination, he was performing at a level that met Avis' legitimate expectations; and (4) Avis subsequently contracted with a similarly qualified applicant outside Plaintiff's protected class. *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir.2003). If Plaintiff is able to establish a prima facie case, Defendant must respond with evidence that it acted with a legitimate nondiscriminatory reason. *See St. Mary's*, 509 U.S. at 506–07, 113 S.Ct. at 2742. If Defendant makes this showing, Plaintiff must present evidence to prove Defendant's articulated reason was only a pretext for unlawful discrimination. *See id.* at 507–08, 113

S.Ct. at 2742. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

The beginning step of the court's analysis under *McDonnell Douglas* is whether Plaintiff has established a prima facie case.[8] The first and second elements of the prima facie case, Plaintiff's membership in a protected class and his ultimate termination, are not disputed by the parties; the remaining two elements, however, are both contested.

■ The fourth element of the prima facie case, Plaintiff's subsequent replacement by a contractor outside of his protected class, has been met. Subsequent to Plaintiff's termination, Avis contracted with an Indian applicant to run the Winston–Salem rental facility. (Muhs Aff. ¶ 3.) Avis contends that its subsequent hiring of a different minority candidate precludes Plaintiff's establishment of a prima facie case. However, courts have found an inference of discrimination raised by the replacement of one minority by another of a different race. *See, e.g., Dang v. Inn at Foggy Bottom*, 85 F.Supp.2d 39, 46

7. In determining the prima facie case for § 1981 actions, it is of no consequence that the plaintiff is an agent or independent contractor instead of an employee. *See, e.g., Taylor v. Alternative Distrib. Sys., Inc.*, 327 F.3d 579, 581 (7th Cir.2003) (applying Title VII prima facie case to an independent contractor's discrimination claim under § 1981); *accord Webster v. Fulton County, Ga.*, 283 F.3d 1254, 1257 (11th Cir.2002).

8. In addition to addressing his prima facie case, Plaintiff suggests that discrimination is evidenced by Avis' failure to terminate the agency contract of New Hanover Rent–A–Car ("New Hanover"), a white operator in Wilmington, North Carolina. New Hanover allegedly engaged in racially discriminatory

rental practices in violation of Avis' Customer Bias and Discrimination Policy. Plaintiff's argument appears to be that he was similarly situated to New Hanover, but was treated differently. There are, however, a number of important factual and legal distinctions between Plaintiff and New Hanover that keep them from being similarly situated. These include the relative contractual relationships between the operators and Avis, the termination provisions in their contracts, and the applicable anti-discrimination policies in effect at the time. As Plaintiff was not similarly situated to New Hanover, the evidence regarding New Hanover is irrelevant and inadmissible, *see* Fed.R.Evid. 401, 402, and will not, therefore, be considered by the court.

(D.D.C.2000) (holding inference of discrimination raised where Vietnamese employee was replaced by someone of another racial minority); *Dancy v. American Red Cross,* 972 F.Supp. 1, 3–4 (D.D.C.1997) (holding inference of discrimination raised where black employee was replaced by Hispanic employee). This holding comports with the requirement that Plaintiff must show that Avis favored another person outside Plaintiff's specific protected class. The court recognizes that if Plaintiff's allegations are indeed true and Avis has discriminated against Plaintiff because he is black, Avis' subsequent hiring of an Indian operator supports Plaintiff's prima facie case. Because all reasonable inferences of fact must be drawn in favor of the non-moving party, the court similarly finds an inference of discrimination raised here. Consequently, the court rejects Avis' interpretation and finds that Avis' hiring of a minority applicant outside Plaintiff's protected class does not preclude the establishment of a prima facie case.

■ The third element of the prima facie case, whether Plaintiff met Avis' legitimate expectations, is at the heart of this matter. Plaintiff presents only his own, self-serving declaration, containing highly conclusory statements and unsubstantiated speculation that his performance met Avis' expectations.[9] Although Plaintiff maintains that business revenues at the Winston–Salem location increased by approximately fifty percent during the period of his operation, he provides no evidence to support his contention. Plaintiff also maintains that he "established high standards, has competent employees, adequate financing, experience and demonstrated managerial ability." (Compl.¶ 19.) Plaintiff's argument is epitomized by his claim that, "because defendant accepted him as an agency representative," he must have met Avis' expectations. (Pl.'s Resp. Def.'s Mot. Summ. J. at 4.)

Notwithstanding Plaintiff's unsupported allegations, the factual record is replete with evidence that Plaintiff did not meet Avis' expectations. Plaintiff's numerous violations of Avis' standards span the nine months immediately preceding his termination. These violations were discovered by Avis as a result of facility inspections, customer complaints, and car rental audits.

First, Plaintiff's operator location was subjected to regular facility inspections pursuant to Avis company policy. Beginning in October 2002 and continuing until his termination, Plaintiff received inspection scores well below Avis' passing grade. The results of each of these inspections were communicated to Plaintiff. Plaintiff's only response to these violations is that they are "subjective" and "exaggerated." (Pl.'s Decl. ¶ 3.) The evidence, however, shows otherwise. Avis' inspectors primarily used two standardized audit forms that contain extensive lists of specific items and work areas to be inspected. Each item or work area is provided a weighted maximum point value with the inspectors filling in the points earned by the operator. Avis had established criterion and a minimum passing score for these kinds of inspections. Some of the completed audit sheets were acknowledged by Plaintiff's signature. On several occasions following audits, Plaintiff was warned of continued infractions. Under the circumstances, it is difficult to see how the audits could be either "subjective" or "exaggerated."

Second, from June 2002 to June 2003, Plaintiff's operator location was the subject of customer complaints. These complaints stemmed from cars rented to customers in a dirty condition. On several

---

9. The declaration adds little to what Judge Beaty previously characterized as a "slight at best" likelihood of success on the merits. (Mem. Op. Order July 24, 2003 at 10).

occasions, Plaintiff offered customers discounts on the dirty cars instead of providing clean ones. Both the renting of dirty cars and the offering of discounted rates for customers to accept them are violations of Avis policy. Nevertheless, Plaintiff contends that Haskell purposefully delivered dirty cars and that, because Plaintiff did not have time to clean the cars, he had to offer discount rates. Despite Plaintiff's contentions, the court notes that the Agreement allocates Plaintiff the obligation to "[p]roperly garage, refuel, wash and clean, detail and, as necessary, locally shuttle [Avis'] vehicles." (Compl. Ex. 2 ¶ 2.b.(2).) Additionally, in August 2002, Haskell reiterated to Plaintiff by letter that "[y]ou will service all your vehicles according to Avis Quality guidelines and standards, which I provided for you the first month of training, October 2001." (Haskell Aff. Ex. Q.) Haskell even arranged for Plaintiff's use of service facilities shared by competitor rental agencies at the Winston–Salem airport.

Last, Avis has documented numerous violations of its financial procedures. (Haskell Aff. ¶¶ 11–14 Exs. N, O.) On various occasions, Plaintiff was asked to explain his credit card acceptance and delayed check-in practices. Plaintiff was informed by letter that continuation of financial procedure violations could lead to termination of the Agreement. (*Id.* Ex. P.) Plaintiff has offered no evidence to explain the violations other than they were "exaggerated." (Pl.'s Decl. ¶ 6.)

That Plaintiff may have found his own performance to be satisfactory does not establish the third element of his prima facie case. Plaintiff's own perception of his job performance is irrelevant. *DeJar-*

nette v. Corning Inc., 133 F.3d 293, 299 (4th Cir.1998); *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 960–61 (4th Cir.1996); *Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980). Although the burden of establishing a prima facie case is not onerous, *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981), when, as here, the employer has "offered substantial evidence that [Plaintiff] was not in fact meeting legitimate job performance expectations, chronicling in detail [Plaintiff]'s poor performance," Plaintiff's unsubstantiated testimony to the contrary is not sufficient to establish a prima facie case of discrimination. *King v. Rumsfeld,* 328 F.3d 145, 149 (4th Cir.2003) ("[W]e have long rejected the relevance of such testimony and held it to be insufficient to establish the third required element of a prima facie discrimination case."). Plaintiff has provided no further evidence to suggest that his performance met Avis' expectations, such as favorable testimony from superiors or documentation of positive work evaluations. Without more, Plaintiff cannot demonstrate a prima facie case of race discrimination under § 1981.[10] *See Williams v. Cerberonics, Inc.,* 871 F.2d 452 (4th Cir.1989) (holding that a black employee failed to establish her claim for discrimination when the only evidence was her own assertions, employee presented no evidence of racial animus, and employer presented voluminous documentation of employee's misconduct). Considering Plaintiff has failed to meet his burden to demonstrate a prima facie case, Defendant is entitled to summary judgment.

---

**10.** Even assuming that Plaintiff has shown a prima facie case of discrimination, Avis has provided ample evidence that it terminated Plaintiff for policy infractions and unsatisfactory performance. Because Plaintiff has no pretextual evidence to refute Avis' evidence, summary judgment would still be appropriate under the next level of the *McDonnell Douglas* analysis.

## IV. CONCLUSION

For the reasons set forth herein, the court will grant Defendant's Motion for Summary Judgment. A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.