# United States Court of Appeals
# for the Fifth Circuit

_____

No. 23-50444
_____

Robert White,

*Plaintiff—Appellee*,

*versus*

Patriot Erectors, L.L.C.,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:20-CV-1219

_____

United States Court of Appeals
Fifth Circuit

**FILED**
August 26, 2024

Lyle W. Cayce
Clerk

Before Elrod and Ramirez, *Circuit Judges*, and Ashe, *District Judge*.[*]
Per Curiam:[†]

Defendant Patriot Erectors, LLC ("Patriot") appeals the district court's denial of its motion for judgment as a matter of law following a jury verdict in favor of plaintiff Robert White on his claims of racial discrimination. We AFFIRM.

_____

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

[†] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-50444

## I. BACKGROUND

Patriot is a steel fabrication and installation company. Patriot hired White, a Black male, as a welder in 2010, and by 2013, he had been promoted to line leader, shift supervisor/shop foreman, and finally production manager/shop supervisor of Patriot's fabrication shop. In March 2019, Patriot acquired another steel fabrication company, Trinity Steel Fabricators ("Trinity"). Shortly after the acquisition, in July 2019, Patriot replaced Eric Herzog, who had been White's supervisor throughout his tenure as production manager, with a former Trinity employee, Mickey Swor, and moved Herzog to another position.

At trial, White testified to two incidents in September 2019 in which he had learned third hand that employees at Patriot used racial slurs against him. White reported the second incident to Patriot's human resources manager, who then informed Swor. Swor and the HR manager confronted the employee who allegedly heard the second racial slur, but the employee denied having heard it, and Patriot did not investigate the matter further.

In mid-October, Swor communicated to Patriot's CEO, Parley Dixon, and one of Patriot's equity owners that he wanted to remove White as production manager due to performance concerns. On October 22 or 23, Dixon met with White and told him that he was being removed as production manager and placed on "paid leave" because of the stress he was under with his ongoing divorce. At the meeting, Dixon and White discussed other opportunities for him—namely, other positions at Patriot, a position with an affiliated company in Arkansas, and starting his own business. On October 31, White filed a certificate of formation for Phynix Fabrication ("Phynix"). He testified, however, that he was still interested in remaining at Patriot, so he set up a meeting with Dixon a week or two later to discuss potential positions. According to White, Dixon informed him at this second meeting that there were

2

actually no available positions at an affiliated company or any positions at Patriot that would pay him his old salary. Patriot promoted a line leader, Justin Snyder—who identifies as "Hispanic white"—to replace White as production manager shortly after his removal.

White received his base pay with benefits for approximately six to eight weeks after being told of his removal. Thereafter, White continued setting up Phynix, which opened its doors in January 2020, but the business struggled during the COVID-19 pandemic. White started a new, more successful business, Falcon Roofing, in April 2020.

Before White's removal, Patriot had nine Black employees working in its fabrication shop. By January 2023, Patriot employed only one, and that employee was not in a management role.

White filed suit against Patriot alleging claims of racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981. At trial, the parties presented competing testimony regarding the true reason for White's removal, and at the close of plaintiff's case, Patriot moved for judgment as a matter of law, arguing that there was insufficient evidence to go to the jury because (1) White left Patriot on his own, (2) White did not present any evidence of actual damages, and (3) White did not present any evidence that Patriot discriminated against him or retaliated against him for reporting the alleged racial slur. The district court denied the motion without prejudice to re-urging it following jury deliberations. The jury then returned a verdict partially in favor of White and partially in favor of Patriot. It found that White suffered an adverse employment action from Patriot and that White would not have suffered the action but for his race, and awarded him $213,930 in wages and employment benefits. The jury did not award any damages for past or future emotional pain and suffering, inconvenience, mental anguish, or loss of enjoyment of life. It found that

No. 23-50444

Patriot did not retaliate against White for reporting the racial slur. Upon hearing the verdict, Patriot renewed its motion for judgment as a matter of law, and the district court ordered briefing on the motion. After reviewing the evidence presented at trial and the parties' briefs, the district court issued an order denying the motion. This appeal followed.[1]

## II. STANDARD OF REVIEW

Rule 50(a) of the Federal Rules of Civil Procedure permits a party to move for judgment as a matter of law at trial before the jury renders its verdict. If the pre-verdict motion is denied, the party can renew its motion under Rule 50(b) following the verdict. Fed. R. Civ. P. 50(b). A Rule 50(b) motion is required to preserve an argument for appellate review. *Downey v. Strain*, 510 F.3d 534, 543 (5th Cir. 2007).

"We review de novo the district court's ruling on a motion for judgment as a matter of law, applying the same legal standard as the trial court." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 431 (5th Cir. 2022) (citing *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001)). A judgment as a matter of law is proper if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). "[W]hen evaluating the sufficiency of the evidence, we view all evidence and draw all reasonable inferences in the light most favorable to the verdict." *Bryant v. Compass Grp. USA Inc.*, 413

---

[1] Patriot's original notice of appeal was premature because it was filed before final judgment was rendered. After a final judgment was entered, Patriot filed a second, timely notice of appeal. Because in certain instances a premature notice may be cured by the filing of a second, timely notice of appeal from the district court's final judgment, we have jurisdiction over this appeal. *Brown v. Wright Nat'l Flood Ins. Co.,* 2021 WL 2934730, at *3 n.1 (5th Cir. July 12, 2021) (citing *Macklin v. City of New Orleans,* 293 F.3d 237, 240 n.1 (5th Cir. 2002)).

F.3d 471, 475 (5th Cir. 2005). However, "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts" remain within the province of the jury. *Kelso v. Butler*, 899 F.3d 420, 425 (5th Cir. 2018) (quotation omitted).

"Although our review is de novo, we recognize that 'our standard of review with respect to a jury verdict is especially deferential.'" *Wantou*, 23 F.4th at 431 (quoting *Flowers*, 247 F.3d at 235). "[A] Rule 50 motion must be denied 'unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'" *Id.* (quoting Flowers, 247 F.3d at 235). "We reverse the denial of a Rule 50 motion only if the jury's factual findings are unsupported by substantial evidence or 'the legal conclusions implied from the jury's verdict cannot in law be supported by those findings.'" *Id.* (quoting *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 614 (5th Cir. 2018)).

## III. DISCUSSION

Patriot contends that the district court erred in denying its motion for judgment as a matter of law on White's discrimination claims because there was insufficient evidence for a reasonable jury to find that White suffered an adverse employment action because of his race. Employing the *McDonnell-Douglas* framework, Patriot argues that the district court should have entered judgment in its favor because (1) White cannot establish a *prima facie* case of discrimination, (2) White did not produce evidence of intentional discrimination, and (3) White did not prove that Patriot's asserted nondiscriminatory reasons for removing him were pretextual.

### A. White's *Prima Facie* Case of Discrimination

When a plaintiff's discrimination claim relies entirely on circumstantial evidence, it is subject to the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that

framework, the initial burden rests with the plaintiff to establish a *prima facie* case by showing that he "(1) belongs to a protected group, (2) was qualified for the position, (3) suffered an adverse employment action, and (4) either (i) was replaced by someone outside of the protected group, or (ii) was treated less favorably than a similarly situated employee (disparate treatment)." *Walker v. Smith*, 801 F. App'x 265, 269 (5th Cir. 2020) (citing, *inter alia*, *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013)). If a plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for its actions. *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002). Lastly, the burden shifts back to the plaintiff to establish that the employer's asserted reason is pretextual. *Id.*

Patriot first argues that White cannot establish a *prima facie* case of discrimination because he did not suffer an adverse employment action. According to Patriot, White was not terminated but rather chose to leave Patriot and start his own business. However, White presented countervailing evidence at trial, including, for example, that the alternative employment opportunities Patriot alluded to were not actually available, and the jury specifically found that White did indeed suffer an adverse employment action. "To accept [Patriot's] view of the evidence and reject the jury's, we would necessarily wade into making credibility determinations, weighing the evidence, and drawing inferences. This we cannot do." *See Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 298 (5th Cir. 2024), *petition for cert. filed*, No. 23-1314 (U.S. June 17, 2024).

Patriot also argues that White was not replaced by someone outside of his protected class, contending that "White is [a] mixed race person (white and black) and so is Justin S[ny]der." The fact that Snyder is one-quarter Hispanic and plaintiff White is one-half Black does not definitively put them within the same protected class for purposes of assessing a *prima facie* case of

discrimination. *See, e.g.*, *Williams v. Wackenhut Corp.*, 2013 WL 4017137, at *5 n.3 (S.D. Tex. Aug. 6, 2013) (citing *Dang v. Inn at Foggy Bottom*, 85 F. Supp. 2d 39, 46 (D.D.C. 2000); *Dancy v. Am. Red Cross*, 972 F. Supp. 1, 3–4 (D.D.C. 1997) (*prima facie* case established where Black employee was replaced by Hispanic employee); and *Dalton v. Avis Rent A Car Sys., Inc.*, 336 F. Supp. 2d 534, 538 (M.D.N.C. 2004), *aff'd*, 131 F. App'x 936 (4th Cir. 2005)); *see also Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 n.7 (5th Cir. 1997) ("'[T]he single fact that a plaintiff is replaced by someone within the protected class does not negate the possibility that the discharge was motivated by discriminatory reasons.'" (alteration omitted) (quoting *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246–47 (5th Cir. 1985))). Nonetheless, the jury was presented with evidence and argument on this point and acted reasonably to reject the same by completing the verdict form as it did.

Regardless, although Patriot argues at length that White failed to establish a *prima facie* case of discrimination, the *McDonnell-Douglas* framework is not technically applicable at this stage. "[W]hen, as here, a case has been fully tried on its merits, we do not focus on the *McDonnell Douglas* burden-shifting scheme. Instead, we inquire whether the record contains sufficient evidence to support the jury's ultimate findings." *Smith v. Berry Co.*, 165 F.3d 390, 394 (5th Cir. 1999) (internal citation omitted); *see also Harris*, 92 F.4th at 297 ("'Post-trial, the *McDonnell Douglas* framework becomes moot.'" (alterations omitted) (quoting *Adams v. Groesbeck Indep. Sch. Dist.*, 475 F.3d 688, 691 (5th Cir. 2007))). In other words, "we need not parse the evidence into discrete segments corresponding to a prima facie case, an articulation of a legitimate, nondiscriminatory reason for the employer's decision, and a showing of pretext. 'When a case has been fully tried on the merits, the adequacy of a party's showing at any particular stage of the *McDonnell Douglas* ritual is unimportant.'" *Travis v. Bd. of Regents of Univ. of Tex. Sys.*,

122 F.3d 259, 263 (5th Cir. 1997) (quoting *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 118 (5th Cir. 1993)).

## B.  Intentional Discrimination

Patriot also argues that White failed to provide any evidence of "discriminatory intent or motive," as White did not accuse his supervisors of making any "racially charged" comments and White did not present evidence of a similarly situated person who was treated differently (*i.e.*, a comparator).  But a showing of discrimination is not limited to this kind of evidence.  As White argues, a "plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).  In other words, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148.  "[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Id.* at 147.  A trier of fact may infer discrimination from the falsity of the employer's explanation when the circumstantial evidence of falsity is of "sufficient 'nature, extent, and quality' to permit a jury to reasonably infer discrimination." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 & n.7 (5th Cir. 2022) (quoting *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 903 (5th Cir. 2000)).

As discussed in more detail below, because the evidence that White presented refuting Patriot's proffered nondiscriminatory reasons for terminating him was of sufficient quality to permit an inference of discrimination, no further showing of animus was required by White.  The jury could infer

discrimination from the false reasons themselves. Therefore, the actual issue is whether the record contains sufficient evidence for a reasonable jury to conclude that Patriot's stated reasons for terminating White were pretextual. *See Harris*, 92 F.4th at 297; *Bryant*, 413 F.3d at 476.

## C. Pretext

Patriot last argues that White did not present sufficient evidence to prove that its nondiscriminatory reasons for terminating him were pretextual.

At trial, Patriot attempted to establish that White was terminated for legitimate business decisions related to a company reorganization (*viz.*, the absorption of Trinity), performance concerns noted by his supervisor, Swor, and/or personal issues identified by Patriot's CEO, Dixon. Swor testified that he decided to remove White because he was not "buy[ing]-in" to the new Tekla software being implemented at the shop, and, under White's watch, work was being duplicated, pieces were being cut improperly and had to be refabricated, product was being shipped lacking their proper portions, inventory was not being tracked, and employees were "job-scared."[2] Swor testified that the "last straw" for him was when he discovered that a project being sub-fabricated by another company, Kennedy Fabricators ("Kennedy"), was also being fabricated by Patriot under White's supervision. Dixon testified that White was removed as production manager and placed on paid leave because White "was in a situation of duress" due to his ongoing divorce.

White presented countervailing evidence to refute Patriot's proffered reasons for terminating him. He adduced testimony that the duplication Swor referred to as the "last straw" before removing White may have

---

[2] That is, made to fear they were at risk of losing their jobs.

actually been caused by Swor himself.  A former Patriot employee, Katelyn Reveal, testified that Swor (who had only recently come over from Trinity) had requested the sub-fabrication by Kennedy and did not use the typical procedure for making the request, and Swor himself testified that he did not look into the cause of the duplication.  Regarding mis-cut items, White testified that mis-cuts were "few and far between," and Reveal testified that mis-cutting occurred "every now and then" under White's supervision but that it continued under Snyder's supervision as well.  White admitted that shipments sometimes lacked their proper portions but explained that this was out of his control because he "was not a direct supervisor over shipping and receiving."  In addition, Reveal and Maryann Ezell, a former Patriot employee and then-girlfriend of White, testified that White did not fail to track inventory and did not manage people by fear.  Another former Patriot employee, Candelario Davila, testified that he never heard White threaten anyone or their job.  Both White and Ezell also testified that Patriot did not provide training on the new Tekla software.  White testified, and Swor admitted, that Swor never warned White or counseled him on any of these alleged performance deficiencies before his removal, notwithstanding Patriot's progressive discipline policy and Swor's own counseling practices.  In fact, White received a total of $52,321.55 in performance bonuses in his last eight months with Patriot, $11,000 of which he received on October 2, 2019, just weeks before his termination.

Regarding his purported "personal issues," White testified that he did not feel that he was under duress around the time of his removal since his divorce "was pretty much finalized," and that the first time Dixon ever expressed concern over White's personal life was at the time he was terminated.

Reviewing the evidence in the light most favorable to the verdict, we conclude there is sufficient (even ample) evidence to support the jury's

verdict. *See Ellerbrook v. City of Lubbock*, 465 F. App'x 324, 331 (5th Cir. 2012) ("Under the applicable standard of review, the court 'must disregard all evidence favorable to the moving party [*i.e.*, the party bringing the renewed motion for judgment as a matter of law] that the jury is not required to believe.'") (quoting *Reeves*, 530 U.S. at 151). Specifically, sufficient evidence was presented that could lead a reasonable jury to conclude that Patriot's reasons for terminating White were pretextual. Then, because White was able to refute or eliminate Patriot's professed justification for removing him, the jury could reasonably infer discrimination. *See Reeves*, 530 U.S. at 143–49.

Even so, White presented additional evidence of discrimination for the jury to consider. White showed that his replacement Snyder (who was not Black) was less qualified for the job, having only supervised crews of 2 to 15 people as opposed to the fabrication shop's roughly 120 employees under White's supervision at the time, and that several of the supposedly qualifying "experiences" Swor noted Snyder as having had were not directly relevant to the production manager role. White also testified to the decrease in Black employees at Patriot's fabrication shop following his termination—from nine in October 2019 to one in January 2023. This evidence, combined with the testimony refuting Patriot's proffered reasons for White's removal, could lead a reasonable jury to conclude that race was the but-for cause of White's removal.

## IV. CONCLUSION

The judgment against Patriot and in favor of White is therefore AFFIRMED.